DENNIS L. KENNEDY (NV Bar No. 1462)
JOSHUA P. GILMORE (NV Bar No. 11576)
KELLY B. STOUT (NV Bar No. 12105)
**BAILEY❖KENNEDY**
8984 Spanish Ridge Avenue
Las Vegas, Nevada 89148-1302
Telephone:  702.562.8820
Facsimile:  702.562.8821
DKennedy@BaileyKennedy.com
JGilmore@BaileyKennedy.com
KStout@BaileyKennedy.com
*Attorneys for Plaintiff/Counter-Defendant*
T1 PAYMENTS LLC

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| T1 PAYMENTS LLC, a Nevada limited liability company,<br><br>                              Plaintiff,<br><br>        vs.<br><br>BEYOND WEALTH PTE LLC, a Utah limited liability company,<br><br>                              Defendant.<br><br>―――――――――――――――<br><br>BEYOND WEALTH PTE LLC, a Utah limited liability company,<br><br>                              Counterclaimant,<br><br>        vs.<br><br>T1 PAYMENTS LLC, *et al*.,<br><br>                    Counterclaim-Defendants. | Case No.  2:20-cv-01405-JCM-VCF<br><br>**<u>MOTION TO DISQUALIFY BEYOND WEALTH PTE LLC'S COUNSEL</u>**<br><br>**HEARING REQUESTED** |

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

1   T1 Payments LLC ("T1 Payments") by and through its counsel, moves to disqualify

2   Beyond Wealth PTE LLC's ("Beyond Wealth") counsel in this matter, the law firms of Rome &

3   Associates, A.P.C. ("Rome & Associates"), Wellman & Warren LLP ("Wellman & Warren"), and

4   Boyack Law Group.  This Motion is made and based on the papers and pleadings on file, the

5   following Memorandum of Points and Authorities and related Appendix of Exhibits, and any oral

6   argument heard by the Court.

7        DATED this 26th day of October, 2020.

8                                          BAILEY❖KENNEDY

9                                          By: */s/ Dennis L. Kennedy*
10                                             DENNIS L. KENNEDY
                                              JOSHUA P. GILMORE
                                              KELLY B. STOUT
11

12                                         *Attorneys for Plaintiff/Counter-*
                                           *Defendant*
13                                         T1 PAYMENTS LLC

14

15               **MEMORANDUM OF POINTS AND AUTHORITIES**

16               **I.        INTRODUCTION**

17        The duty of loyalty is the heart of the attorney-client relationship.  A client who retains a

18   lawyer to represent the client in a matter has an absolute and continuing right to expect that his

19   lawyer will remain loyal and faithful to him during the matter and after the matter has concluded.

20   So, too, does a client have an absolute and continuing right to expect that information shared in

21   confidence with a lawyer will not later be used by the lawyer in order to advance the interests of

22   another client against the former client.

23        Like every other client, T1 Payments had those expectations with respect to its former

24   lawyers at the Law Offices of Thomas F. Monroe, including Bradley Cebeci ("Mr. Cebeci") who

25   worked for that firm for over 14 years.  Unfortunately, those expectations have been subverted

26   through actions taken by Mr. Cebeci in this case.  Specifically, Mr. Cebeci has appeared in this case

27   directly adverse to T1 Payments, even though he openly admits and acknowledges that he previously

28   represented and advised T1 Payments on matters that are central if not dispositive to this case.

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

The facts are simple but striking:

- Mr. Cebeci previously advised T1 Payments concerning its template merchant agreement.  Now, Mr. Cebeci is claiming that T1 Payments' template merchant agreement (the very document on which he rendered legal advice) is unconscionable on its face and, separately, void as an illegal contract because T1 Payments operated fraudulently.

- Mr. Cebeci previously assisted in the defense of T1 Payments in litigation in which merchants claimed that T1 Payments' business was fraudulent.  Now, Mr. Cebeci is assisting two merchants who are claiming that T1 Payments' business (the same business that Mr. Cebeci sought to protect) is fraudulent.

- Mr. Cebeci previously was made knowledgeable of T1 Payments' confidential business relationships with acquirers.  Now, Mr. Cebeci is using that information to bring claims against one of those acquirers (despite having agreed to keep confidential the very existence of that acquirer's relationship with T1 Payments).

Even worse, Mr. Cebeci recently filed a declaration in another case suggesting if not admitting that he currently possesses the work product that he generated for T1 Payments and accessed such work product in order to advance his new client's interests against T1 Payments, testifying about those matters "[b]ased upon a review of the *information available to me* and my personal recollection."[1]

While Mr. Cebeci is a California lawyer, the Nevada Rules of Professional Conduct—which Mr. Cebeci agreed would apply to him when he applied for, and was granted, the privilege of appearing before this Court on behalf of Beyond Wealth— absolutely forbid Mr. Cebeci from doing what he is doing: ***Switching sides in a substantially related matter and attacking his own work product***, Nevada RPC 1.9(a), and using information related to his prior representation of T1 Payments to T1 Payments' disadvantage, Nevada RPC 1.9(c)(1).  His disqualification is mandated to enforce T1 Payments' expectation that Mr. Cebeci will honor his continuing duties of loyalty and confidentiality owed to his former client.  MODEL R. PROF'L CONDUCT, R. 1.9 cmt. [1].

Because Mr. Cebeci is plagued by an irreconcilable conflict of interest, his firm must also be disqualified.  Nevada law is very clear on this point.  Nevada RPC 1.10(a).  Further, because Mr. Cebeci has, by all accounts, shared T1 Payments' confidential and privileged information with his co-counsel (the Boyack Law Group and Wellman & Warren) in order to assist them in preparing

---

[1]     Decl. of Bradley O. Cebeci in Supp. of New U Life Corp.'s Mot. for Leave to File First Am. Compl., *New U Life* Action (D. Nev. Oct. 1, 2020), attached as Ex. 33, ¶¶ 28, 31 (emphasis added).

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

Beyond Wealth's amended pleading, they, too, must be disqualified. *Brown v. Eighth Jud. Dist. Ct.*, 14 P.3d 1266, 1267 (Nev. 2000). While disqualification will cause Beyond Wealth to have to find alternate counsel, Beyond Wealth has Mr. Cebeci to blame for that, not T1 Payments. Anything less than disqualification threatens T1 Payments' rights and devalues the public's interest in the scrupulous administration of justice.

For these reasons, as discussed more fully below, the Court should grant this Motion in its entirety and disqualify Beyond Wealth's counsel.

## II.      RELEVANT FACTS

T1 Payments provides payment processing services to companies (merchants) who sell goods and services online. (Ex. 1 at ¶ 5.[2]) Over time, T1 Payments has had relationships with acquirers (companies that help facilitate allowing merchants to accept credit and debit cards as forms of payments) which, in turn, have relationships with banks and Visa/MasterCard that further facilitate T1 Payments' ability to provide payment processing services. (*Id.*)

### A.      **T1 Payments Retains the Law Offices of Theodore F. Monroe.**

On April 27, 2016, T1 Payments and Donald Kasdon entered into a written contract with the Law Offices of Theodore F. Monroe (the "Monroe Firm") to provide legal advice and representation regarding (1) pending litigation; and (2) "other general payment issues." (Ex. 2.[3]) At the time of the engagement, the pending litigation included:

- *DermAktive, LLC v. Atlantic–Pacific Payment Processing Systems, Inc.*, No. A-16-737420-B (Nev. 8th Jud. Dist. Ct.) (the "*DermAktive* State Action")[4]; and

- *Gilling Investments, LLC v. Kasdon*, No. A-16-732103-C (Nev. 8th Jud. Dist. Ct.) (the "*Gilling* Action").

---

[2]       Decl. of Amber Fairchild, Oct. 26, 2020, attached as Ex. 1.

[3]       Legal Rep. & Fee Agrmt. (Apr. 27, 2016), attached as Ex. 2.

[4]       Although there was a federal court action, in which DermAktive later asserted the same claims raised in the *DermAktive* State Action, no claims were asserted against any of the T1 Parties in the federal court action until after the Monroe Firm's representation was terminated. (*See* Ex. 1 at ¶ 17; *see also* Docket, *DermAktive LLC v. Atl.-Pac. Proc'g Sys. Inc.*, No. 2:16-cv-00739-JAD-PAL (D. Nev) [hereinafter *DermAktive* Federal Action] (showing [DermAktive LLC and Jordan Duffner's] Countercl. and Third Pty. Compl. filed on Sept. 19, 2016.)

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

(Ex. 1 at ¶ 7.)  Although the engagement letter identified only T1 Payments and Mr. Kasdon as clients, the Monroe Firm's representation also included Amber Fairchild, Debra King, T1 Payments Limited, and 7 Processing LLC (collectively, the "T1 Parties"), who were named as co-defendants in the *DermAktive* State Action and/or the *Gilling* Action.  (*Id.* at ¶ 8.)  The Monroe Firm represented the T1 Parties until on or about July 11, 2016.  (*Id.* at ¶ 10.)

### 1.   Mr. Cebeci's Relationship with the Monroe Firm

It is undisputed that Mr. Cebeci was an attorney working for the Monroe Firm for the entire time that the firm represented T1 Payments and Mr. Kasdon.  (Ex. 33 at ¶ 27.)  At the time, Theodore F. Monroe, Esq. ("Mr. Monroe") had not expressly disclosed to T1 Payments Mr. Cebeci's affiliation with his firm or involvement in the T1 Parties' representation.  (Ex. 1 at ¶ 11.) Mr. Cebeci was not named in the engagement letter and the Monroe Firm's invoices do not identify him (or any timekeeper, for that matter) who performed different tasks for T1 Payments.  (Exs. 2, 9[5].)  Notwithstanding, Mr. Cebeci freely admits that he performed work for the T1 Parties.  (Ex. 33 at ¶ 27.)

Although Mr. Cebeci has represented to the Court that he was nothing more than a "contract lawyer" with the Monroe Firm whose prior work for T1 Payments was "not related to this case" (*id.*), T1 Payments has recently discovered evidence indicating that Mr. Cebeci's characterization is false.  Further, it appears that Mr. Cebeci still retains portions of his prior work for T1 Payments. (*See id.* at ¶¶ 28, 31-32 (indicating that he reviewed information available to him in purporting to describe his prior representation of T1 Payments).)

In contrast to Mr. Cebeci's description of his role as that of a "contract attorney," his publicly-available LinkedIn profile states that he was "Of Counsel" with the Monroe Firm from April 2003, until August 2017—a period of 14 years and 5 months.  (Ex. 3.[6])  A June 2016 article

---

[5]    T1 Payments' Invoices for May 27, 2016, through July 11, 2016 (redacted), attached as Ex.8.

[6]    LinkedIn, Bradley O. Cebeci, https://www.linkedin.com/in/bradley-o-cebeci-7a667658/ (last visited Oct. 20, 2020), attached as Ex. 3.

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

co-authored by Mr. Cebeci and Mr. Monroe also identifies Mr. Cebeci as "an attorney with the Law

Offices of Theodore Monroe."  (Ex. 4.[7])

Mr. Cebeci describes his work for the Monroe Firm as follows:

> Extensive experience handling all aspects of payments processing disputes, trademark and commercial litigation, and defense of Federal Trade Commission actions; extensive transactional work, including drafting merchant processing, sales agent, third party vendor, portfolio purchase, and other agreements; advertising and billing practices review for compliance with FTC Act, Restore Online Shoppers Act and similar federal and state consumer protection statutes.

(*Id.*)

Also, Mr. Cebeci used an email address with a Monroe Firm domain—

Cebeci@tgmlaw.com—and participated in correspondence with individuals outside of the Monroe

Firm.  (*See, e.g.*, Ex. 6[8] (correspondence with counsel in *DermAktive* Actions).)  A search of

CourtLink, which includes case information from Pacer and more than 1,200 state courts, shows

that between April 2003 and August 2017, Mr. Cebeci appeared as counsel in four cases.  (Ex. 10.[9])

In each case, he identified himself as being affiliated with the Monroe Firm.  (Exs. 11-16.[10])  Thus,

it appears that Mr. Cebeci worked exclusively for the Monroe Firm in an "of counsel" role from

April 2003, until August 2017.[11]

/ / /

/ / /

BAILEY✦KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

---

[7]       Theodore F. Monroe & Bradley O Cebeci, Acquirer and Third-Party SAR Obligations for Transaction Laundering, VERISK FINANCIAL, June 7, 2016, https://www.g2llc.com/blog/11865/acquirer-third-party-sar-obligations-transaction-laundering/, attached as Ex. 4.

[8]       Email chain between Theodore F. Monroe, Bradley O. Cebeci, Catherine Close, The Law Offices of Theodore F. Monroe; and Dirk Julander, Julander Brown Bollard, July 8-11, 2016, attached as Ex. 6.

[9]       CourtLink Search Results, Oct. 22, 2020, attached as Ex. 10.

[10]      Dockets for *Media Maverick Inc. v. Group Rayma SA*, No. 2:04-cv-01260 (C.D. Cal.); *Fed. Trade Comm'n v. Am. Bartending Inst. Inc.*, No. 2:05-cv-05261 (C.D. Cal.); *Chitre v. Hartman*, No. 1-01-cv-102976 (Cal. Super. Ct.); *In re Pipeline Data, Inc.*, No. 1:12-bk-13123-KJC (Bankr. D. Del.), attached as Exs. 11-14. Stip. & Order to Continue Hrg. Date on Civil Contempt and Prelim. Inj. Mots., *Fed. Trade Comm'n v. Am. Bartending Inst. Inc.*, No. 2:05-cv-05261 (C.D. Cal. Aug. 4, 2005), attached as Ex. 15. Meridian Bank's Objs. to Debtors' Mot. to Compel Meridian Bank to Comply with Agrmt., *In re Pipeline Data, Inc.*, No. 1:12-bk-13123-KJC (Bankr. D. Del. Jan. 6, 2014), attached as Ex. 16. "A court may take judicial notice of matters of public record." *Lee v. City of L.A.*, 250 F.3d 668, 689 (9th Cir. 2001); *see also* Fed. R. Evid. 201(b)(2) ("The court may judicially notice a fact that is not subject to reasonable dispute because it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.")

[11]      Mr. Cebeci's LinkedIn profile does not identify any other employment during that period.  (Ex. 3.)

2.      The Work the Monroe Firm Performed for the T1 Parties.

In order to advise the T1 Parties on the pending litigation matters and general business issues (*see* Ex. 2), the Monroe Firm required information on virtually all aspects of the business. Accordingly, the representation began with Mr. Monroe visiting the T1 Parties' offices and being provided with full access to T1 Payments' electronic files.  (Ex. 1 at ¶ 14.)  This information included a wealth of information about T1 Payments' operations and business partners, much of which is confidential and constitutes trade secrets.  (*Id.*)

a.      The *DermAktive* Actions

In April 2016, DermAktive, LLC ("DermAktive") was a T1 Payments' merchant and Atlantic-Pacific Payment Processing Systems, Inc. ("APPS") facilitated T1 Payments' ability to provide payment processing services to DermAktive, among other merchants, by providing access to a bank to process the credit card transactions.  (*Id.* at ¶ 16.)  When DermAktive threatened to sue APPS for failing to release payment processing proceeds, APPS initiated a lawsuit, the *DermAktive* Federal Action, seeking a declaratory judgment.  (*Id.* at ¶ 17; Ex. 18.[12])

On May 26, 2016 (before filing a response to the Complaint in the *DermAktive* Federal Action), DermAktive filed a Complaint in Nevada's Eighth Judicial District Court against APPS, T1 Payments, Mr. Kasdon, Ms. Fairchild, and Ms. King for fraud and related claims based on T1 Payments' payment processing system and failure to release payment processing proceeds.  (Ex. 21.[13])  According to the pleadings, the issues in the *DermAktive* State Action included disputes relating to the legality of T1 Payments' overall business and many provisions of its template "Merchant Application," including the reserve amount and early termination fee.  (*See, e.g.*, Ex. 21 at ¶¶ 13-24, 69-73.)  DermAktive sought more than $24 million in damages.  (*Id.* at ¶¶ 96, 108, 118, 128, 137, 145.)

The invoices prepared by the Monroe Firm demonstrate that, at a minimum, it performed the following tasks related to the *DermAktive* State and Federal Actions:

[12]      Compl., *DermAktive* Fed. Action, (D. Nev. Apr. 4, 2016), ECF No. 1, attached as Ex. 18.

[13]      Compl., *DermAktive* State Action, (Nev. 8th Jud. Dist. Ct. May 26, 2016), attached as Ex. 21.  Shortly thereafter, DermAktive asserted similar claims against the same parties in the *DermAktive* Federal Action.  (*See* Countercl. & Third Party Compl., *DermAktive* Fed. Action, (D. Nev. Sept. 19, 2016), ECF No. 24, attached as Ex. 19.)

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

- Review and analysis of the Complaint and Motion to Dismiss or Stay the Action in the *DermAktive* State Action;
- Multiple telephone calls and email correspondence with the T1 Parties' counsel of record in the *DermAktive* Actions and counsel for APPS regarding case strategy, pleadings, and motion practice;
- Multiple telephone calls and email correspondence with counsel for DermAktive;[14]
- Multiple telephone calls and email correspondence with the T1 Parties regarding case strategy;
- Review of client documents for case information and production in discovery;
- Research and legal analysis regarding procedural issues, including removal, joinder, service, compulsory counterclaims, ancillary jurisdiction, and forum selection clauses;
- Respond to negative publicity relating to pending litigation, including drafting cease and desist letters; and
- Other tasks related to "DermAktive issues".

(Ex. 8.)

Although Mr. Cebeci has attempted to minimize his involvement in the *DermAktive* Actions, he admits to reviewing the Complaint and other filed documents, conducting research, drafting a chronology of events, and sending two cease and desist letters. (Ex. 33 at ¶ 28.) T1 Payments is unable to conduct a meaningful analysis of Mr. Cebeci's role in the *DermAktive* Actions because his involvement was never disclosed by Mr. Monroe and the Monroe Firm's invoices do not clearly identify which attorney performed which task, and instead combine work on all matters by all timekeepers into a single bill. (Ex. 8.) Nonetheless, it is evident from the invoices to the T1 Parties that Mr. Cebeci's involvement was broader than he describes.

---

[14]     Mr. Rothman's current representation of T1 Payments after being opposed to T1 Payments while representing DermAktive presents no conflict of interest.  In brief, *DermAktive's* interests are not implicated in any matter for which Mr. Rothman represents T1 Payments.  By contrast, as explained herein, Mr. Cebeci's prior representation of T1 Payments conflicts with his current representation of merchants whose interests are ***directly and materially adverse*** to T1 Payments.

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

From the billing descriptions, it appears that Mr. Cebeci was also involved in litigation strategy and reviewed "client materials."  On May 30, 2020, he and Mr. Monroe had an "extended telephone conference . . .  re review and analysis of complaint and [client] materials."  (Ex. 8 at 1.) The T1 Parties were also billed for other conference calls by someone (namely, Mr. Cebeci) with Mr. Monroe related to responding to press releases, removal to federal court, litigation strategy, and necessary action.  (*Id.* at 5.)

Additionally, T1 Payments is in possession of an email string between Mr. Monroe and counsel for APPS in which Mr. Monroe copied Mr. Cebeci.  (Ex. 6.)  This email further proves that Mr. Cebeci was involved in the litigation.

Due to the Monroe Firm's lack of transparency in its billing records, T1 Payments cannot know the full extent of the work that Mr. Cebeci performed or information that he learned. Nevertheless, it is clear that he was actively involved in the Monroe Firm's representation of T1 Payments.

b.    The *Gilling* Action

The Monroe Firm also advised the T1 Parties on the Gilling *Action*.  (Ex. 1 at ¶ 18.)  On February 19, 2016, Gilling Investments LLC ("Gilling") filed a Complaint against Mr. Kasdon, T1 Payments, and 7 Processing, alleging claims related to improper payment processing and failure to remit funds owed to Gilling.  (Ex. 23.[15])  These claims put T1 Payments' CPPA at issue, including the Early Termination Fee—the very document that the Monroe Firm was charged with reviewing and revising.  (Ex. 1 at ¶ 19.)

After the T1 Parties prevailed on a Motion for a More Definite Statement, Gilling filed an Amended Complaint on June 16, 2016. (Exs. 22, 24.[16])  In the Amended Complaint, Gilling added Ms. Fairchild, Ms. King, and T1 Payments Limited as additional defendants and added new allegations of a business scheme involving the related entities purportedly designed to defraud merchants.  (Ex. 24.)

---

[15]    Compl. and Jury Demand, *Gilling* Action (Nev. 8th Jud. Dist. Ct. Feb. 19, 2016), attached as Ex. 23.

[16]    Am. Compl., *Gilling* Action (Nev. 8th Jud. Dist. Ct. June 16, 2016), attached as Ex. 24; *see also* Docket from *Gilling* Action, attached as Ex. 22.

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

Despite the deficiencies in the Monroe Firm's billing, it appears that Mr. Cebeci performed work on the *Gilling* Action, primarily related to preparing the Answer to the Amended Complaint, which was filed on July 14, 2016 (3 days after the T1 Parties terminated the Monroe Firm's representation).  (Ex. 8; *see also* Ex. 7[17], Ex. 25[18].)  Mr. Cebeci admits that he drafted the Answer, which, by necessity, would have required him to discuss the allegations in the Amended Complaint with Mr. Monroe who had been in contact with T1 Payments.  (Ex. 33 at ¶ 28.)  It also appears that Mr. Cebeci may have performed research and legal analysis regarding the substantive law relevant to the counterclaims and third party claims later asserted by T1 Payments Limited.  (Ex. 8 at 5 (referencing "[l]egal research re counter claim and third party claim and timing re same"); *see also* Ex. 22.)

### c.   Work on General Business Matters

In addition to providing advice and support for the *DermAktive* Actions and the *Gilling* Action, members of the Monroe Firm also advised the T1 Parties on general business matters.  (Ex. 1 at ¶ 15.)  In order to provide such advice, as noted above, the T1 Parties provided the Monroe Firm with virtually unrestricted access to its files and detailed information on all aspects of its business.  (*Id.* at ¶ 14.)

When it retained the Monroe Firm, T1 Payments anticipated creating a long-term relationship with the firm for purposes of providing comprehensive advice and assisting its litigation counsel.  (*Id.* at ¶ 13.)  Therefore, shortly after being retained, Mr. Monroe visited the T1 Parties at their office and was provided with full access to T1 Payments' electronic files.  (*Id.* at ¶ 14.)  He had complete access to information related to T1 Payments' operations, business structure, and relationships with its business partners (including acquirers), the majority of which is confidential and constitutes trade secrets.  (*Id.*)

While members of the Monroe Firm provided advice on numerous aspects of the business, a significant amount of time was spent revising its "form" contracts (i.e., templates).  In particular,

---

[17]      Email from Theodore F. Monroe, Esq., The Law Offices of Theodore F. Monroe; to J. Malcolm DeVoy, DeVoy Law; Amber Fairchild; and Donald Kasdon (July 11, 2016) (redacted), attached as Ex. 7.

[18]      Defs.' Answer to Am. Compl., *Gilling* Action (Nev. 8th Jud. Dist. Ct. June 16, 2016), attached as Ex. 25.

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

the Monroe Firm was asked to revise the Merchant Agreement (which includes: (1) a Card Payment Processing Agreement (the "CPPA"); and (2) a Merchant Services Application), Payfac Agreement, Guaranty, and the Vantiv Submerchant Agreement.  (*Id.* at ¶ 15.)

Notwithstanding Mr. Cebeci's representation that his work was limited to "revising T1's merchant agreement according to Mr. Monroe's instructions; and a short amount of time reviewing a 'Vantiv Submerchant Agreement'" (Ex. 33 at ¶ 28, 30), the billing invoices show that he (and Mr. Monroe) actually spent a significant amount of time revising the Merchant Agreement.  On June 8, 2016, Mr. Cebeci spoke with Mr. Monroe "re necessary revisions to merchant agreement."  (Ex. 8 at 3.)  ***Over the next two (2) weeks, the Monroe Firm billed approximately 30 hours revising the Merchant Agreement***.[19]  (*Id.* at 1-4.)  There are several days with multiple entries relating to revisions of the Merchant Agreement, which suggests that multiple individuals performed work on the documents.  (*Id.*)

In order to protect its trade secrets, other confidential business information, and attorney-client privilege, T1 Payments does not disclose the instructions provided to the Monroe Firm or the advice that it received regarding the Merchant Agreement.  However, the review was comprehensive (hence the approximately 30 hours' worth of work), and the revisions were extensive and included multiple drafts.  (Ex. 1 at ¶ 15; *see also* Ex. 5[20] (transmitting revised drafts on June 18, 2016 and June 20, 2016).)  The last set of revisions to the CPPA were sent to T1 Payments on June 20, 2016.  (*Id.*)

***T1 Payments recently discovered that a redline of the CPPA shows that Mr. Cebeci reviewed and revised it***.  (*See* Ex. 5 at 3-23 (redline version with markup list appended to the end of the document identifying Mr. Cebeci as the author of all markups).)  The redlines conclusively establish Mr. Cebeci's active involvement in advising T1 Payments concerning its Merchant Agreement.

---

[19]    Due to the fact that the Monroe Firm uses "block billing" (combining multiple tasks into a single time entry without allocating time to individual tasks), it is impossible to determine the precise amount of time spent on this task.

[20]    Email chain between Theodore F. Monroe, Esq., The Law Offices of Theodore F. Monroe; Kory Kaplan, Kaplan Cottner; Amber Fairchild; and Donald Kasdon (June 18-20, 2016), attached as Ex. 5.  This document (and its attachment) has been redacted to protect attorney client privileged communications.

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

Although T1 Payments is limited in its ability to determine the precise work that Mr. Cebeci performed, it is evident that he was involved in all aspects of the Monroe Firm's representation of the T1 Parties and worked closely with Mr. Monroe.

## B.   The *New U Life* Action.[21]

In October 2019, T1 Payments filed a declaratory judgment action against New U Life, one of T1 Payments' merchants.  In the *New U Life* Action, T1 Payments alleged that it is entitled to hold New U Life's payment processing proceeds and assess an early termination fee per the parties' Merchant Agreement, which was attached to the Complaint as Exhibit 1.  (Ex. 27.[22])  *The early termination fee and other contractual provisions in the Merchant Agreement are identical or materially identical to the provisions in the CPPA that Mr. Cebeci reviewed and revised in 2016*.  (Ex. 1 at ¶ 26.)

In November 2019, New U Life, represented by Ms. Premsrirut of the Brown Law Firm, appeared and filed its answer and asserted counterclaims for declaratory relief, breach of contract, and breach of the implied covenant of good faith and fair dealing.  (Ex. 28.[23])  The counterclaims simply disputed T1 Payments' interpretation of the Merchant Agreement and its right to the processing proceeds and ability to assess the Early Termination Fee.  (*Id.* at 43.)

The case proceeded to discovery until September 2020, when New U Life's counsel, Ms. Premsrirut, requested to extend some case deadlines.  (*See* Ex. 35 at Ex. 2[24].)  When requesting the extensions, Ms. Premsrirut did not state that New U Life would seek to file an amended complaint (the deadline to do so was March 20, 2020) or seek extensions other than those identified in the parties' stipulation.  (*Id.*)  T1 Payments agreed to some of the requests, and New U Life filed the stipulation on September 15, 2020, with T1 Payments' requested revisions and concessions.  (*Id.*)

---

[21]     *T1 Payments LLC v. New U Life Corp.*, No. 2:19-cv-01816-APG-DJA (D. Nev.).

[22]     Comp., *New U Life* Action (D. Nev. Oct. 17, 2019), attached as Ex. 27.

[23]     Def.'s Answer to Compl., Stmt. of Aff. Defenses, and Countercl., *New U Life* Action (D. Nev.  Nov. 20, 2019), attached as Ex. 28.

[24]     Email chain between Puoy Premsrirut and Kami DeSavio, Brown Brown & Premsrirut; Ari R. Rothman, Venable LLP; Kory Kaplan, Kaplan Cottner (Sept. 1-15, 2020).

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

1       Also on September 15, 2020, Mr. Cebeci filed his motion for admission *pro hac vice*. (Ex.

2  30.[25]) It was granted the same day. (Ex. 31.[26]) This was when T1 Payments first learned of Mr.

3  Cebeci's involvement in this litigation. (Ex. 1 at ¶ 24.)

4       The parties scheduled a discovery dispute conference for September 18, 2020, in order to

5  discuss T1 Payments' objections to New U Life's discovery responses. (Ex. 35 at 10:15-16.[27])

6  Less than thirty minutes before the call, Ms. Premsrirut sent an email to T1 Payments' counsel, Mr.

7  Rothman, and copied Eugene Rome and Brianna Dahlberg, two attorneys from Mr. Cebeci's firm

8  (Rome & Associates), but did not copy Mr. Cebeci. (*Id.* at 10:17-11:9, Ex. 35 at Ex. 1[28].) Ms.

9  Premsrirut stated that she had conducted "independent research and discovery over the last month"

10  and "that my office and newly joined counsel have prepared a substantial and detailed First

11  Amended Counterclaim to conform to this newly discovered evidence." (*Id.*)

12       On September 25, 2020, Ms. Dahlberg sent a proposed First Amended Counterclaim to T1

13  Payments' counsel and requested that they stipulate to the amendment. (Ex. 35 at Ex. 9[29].) The

14  proposed First Amended Counterclaim seeks to add Mr. Kasdon, Ms. Fairchild, Ms. King, and

15  other T1 entities (collectively, the "T1 Counterdefendants") as additional counterclaim defendants.

16  (Ex. 34.[30]) New U Life alleges that the T1 Counterdefendants' processing operations are unlawful

17  and seeks a declaratory judgment invalidating certain provisions of New U Life's processing

18  agreement with T1 Payments, which are identical or materially identical to those set forth in the

19  Merchant Agreement that Mr. Cebeci reviewed and revised in 2016. (*Id.*)

---

[25]    Verified Pet'n for Permission to Practice in this Case Only by Atty. Not Admitted to the Bar of This Ct, and Desig. of Local Counsel, *New U Life* Action (D. Nev. Sept. 15, 2020), attached as Ex. 30.

[26]    Order Grant. Verified Pet'n for Permission to Practice in this Case Only by Atty. Not Admitted to the Bar of This Ct, and Desig. of Local Counsel, *New U Life* Action (D. Nev. Sept. 15, 2020), attached as Ex. 31.

[27]    Mot. to Vacate Stip. Order, *New U Life* Action (D. Nev. Oct. 2, 2020), attached as Ex. 35.

[28]    Email chain between Puoy Premsrirut and Kami DeSavio, Brown Brown & Premsrirut; Ari R. Rothman, Venable LLP; Kory Kaplan, Kaplan Cottner; Eugene Rome and Brianna Dahlberg, Rome & Assoc. (Sept. 17-18, 2020).

[29]    Email chain between Puoy Premsrirut and Kami DeSavio, Brown Brown & Premsrirut; Ari R. Rothman, Venable LLP; Kory Kaplan, Kaplan Cottner; Brad Cebeci, Eugene Rome, Brianna Dahlberg, and Jennifer Cho, Rome & Assoc. (Sept. 25-29, 2020).

[30]    [Proposed] First Am. Countercl., *New U Life* Action (D. Nev. Oct. 1, 2020), attached as Ex. 34.

Additionally, the First Amended Counterclaim references a prior action against the T1 Counterdefendants by unrelated parties.  (Ex. 34 at ¶ 206.)  This reference causes the T1 Counterdefendants to question whether there was a violation of a confidentiality agreement from the prior action.  (Ex. 1 at ¶ 27.)

Within days of learning of Mr. Cebeci's involvement, the T1 Counterdefendants retained the law firm of Bailey❖Kennedy.  (*Id.* at ¶ 32.)  Bailey❖Kennedy immediately sent correspondence notifying New U Life's counsel of the conflict.  (Ex. 36.[31])  The T1 Counterdefendants' counsel then sent New U Life's counsel a letter via email disclosing the conflict, and stating T1 Payments' position that it would not stipulate to the filing of an amended counterclaim "in light of the correspondence Dennis Kennedy of Bailey Kennedy, LLP sent to each of you today.  T1 Payments requests that you refrain from filing any motion seeking leave to file the proposed amended complaint until Mr. Kennedy completes his investigation and the Court rules on whether any relief is warranted."  (Ex. 35 at Ex. 9.)

New U Life refused the request and filed its Motion for Leave to file the First Amended Counterclaim on October 1, 2020.  (Ex. 32.[32])

## C.    The Current Action.[33]

On July 28, 2020, T1 Payments filed a declaratory judgment action against merchant Beyond Wealth PTE LLC ("Beyond Wealth").  (ECF No. 1.[34])  T1 Payments alleges that it is entitled to hold Beyond Wealth's reserves and assess an early termination fee per the parties' contract, which is attached to the Complaint.  (*Id.*)  Like in this case, the *Beyond Wealth* Action is also based on a CPPA that is materially identical to the one that Mr. Cebeci reviewed and revised in June 2016.  (*Compare* Ex. 27 at Ex. 1 (CPPA) *with* ECF No. 1 at Ex. 1 (CPPA).)

---

[31]     Email from Dennis L. Kennedy, Bailey❖Kennedy to Puoy Premsrirut and Kami DeSavio, Brown Brown & Premsrirut; Brad Cebeci, Eugene Rome, and Brianna Dahlberg, Rome & Assoc. (Sept. 29, 2020), attached as Ex. 36.

[32]     New U Life Corp.'s Mot. for Leave to File First Am. Countercl.; Mem. of P&A in Supp. Thereof, *New U Life* Action (D. Nev. Oct. 1, 2020), attached as Ex. 32.

[33]     Docket, *T1 Payments LLC v. Beyond Wealth PTE LLC*, No. 2L20-cv-01405-JCM-VCF (D. Nev.), attached as Ex. 26.

[34]     Compl., July 28, 2020, ECF No. 1.

On August 4, 2020, Beyond Wealth appeared and filed an emergency application to release funds and a Counterclaim.  (ECF Nos. 5-6.[35])  The Counterclaim included various claims disputing T1 Payments' contractual right to processing fees and the Early Termination Fee.  (ECF No. 6.)  At the time of its first appearance, Beyond Wealth was represented by Scott Wellman, Esq. of the law firm Wellman & Warren LLP, and Bradley S. Slighting, Esq. of the law firm Boyack Law Group.  (ECF No. 5.)

On August 12, 2020, Mr. Wellman sent an email to T1 Payments' counsel, which contains information about a business partner whose relationship with the T1 Parties is not public knowledge.  (Ex. 1 at ¶ 30.)  At the time, T1 Payments could not determine how Mr. Wellman had learned of this information.  (*Id.*)

On August 17, 2020, Mr. Wellman sent an email to T1 Payments' counsel, which states:

> We have associated in attorneys Eugene Rome and Bradley Cebeci to assist us in this matter. Over the past few days, we have come across significant information of the illegal nature of the CPPA as well as multiple violations of the relevant bank card rules.  As I am not a payment processor expert, I was unaware of the significant nature of the violations engaged in by T1 Payments.  We will, no doubt, need to bring the T1 acquire into the action and request is made that you disclose to us who the acquire is for the Beyond Wealth processing.  I have also been working on the pattern of wrongdoing engaged in by T1 as this will be needed from our RICO claim.  Would you be willing to stipulate to an expedited discovery order as you had alluded to this in your response to our application?  Such an order would benefit both sides.  Although Beyond Wealth is in crucial need of the funds withheld by T1, it is best that we get the proper information in front of the court to assist it in adjudicating the matter.

(Ex. 37.[36])  Mr. Cebeci filed his application for admission *pro hac vice* on September 17, 2020.  (ECF No. 38.[37])  It was granted on September 25, 2020.  (ECF No. 55.[38])

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

---

[35]   Emerg. Mot. for an Order to Release Funds or, in the Alt., to Set an Expedited Hrg., Aug. 4, 2020, ECF No. 5; Counter Compl., Aug. 4, 2020, ECF No. 6.

[36]   Email from Scott W. Wellman, Wellman & Warren LLP, to Kory Kaplan, Kaplan Cottner; Ari R. Rothman, Venable LLP (Aug. 17, 2020), attached as Ex. 37.

[37]   Verified Pet'n for Permission to Practice in this Case Only by Atty. Not Admitted to the Bar of This Ct, and Desig. of Local Counsel, Sept. 17, 2020, ECF No. 38 (a corrected image was filed as ECF No. 43).

[38]   Order Grant. Verified Pet'n for Permission to Practice in this Case Only by Atty. Not Admitted to the Bar of This Ct, and Desig. of Local Counsel, Sept. 25, 2020, ECF No. 55.

On August 19, 2020, Beyond Wealth filed its First Amended Counterclaim.  (ECF No. 21.[39])  The amended counterclaim seeks to add Mr. Kasdon, Ms. Fairchild, Ms. King, other T1 entities, together with Payvision and Atlantic Capital Bank.  (*Id.*)  Just like the proposed First Amended Counterclaim in the *New U Life* Action, this amended counterclaim attacks T1's payment processing operations and provisions of Beyond Wealth's processing agreement with T1 Payments, which are identical or materially identical to those set forth in the agreement that Mr. Cebeci reviewed and revised in 2016.  (*Compare* Ex. 34 *with* ECF No. 21.)  For example:

- ". . . the E[arly ]T[ermination ]F[ee] is unenforceable as an illegal penalty provision." (ECF No. 21 at ¶ 95.)

- "Self-evidently, Counterclaim-Defendants drafted the CPPA to circumvent Card Brand Rules and federal law and conceal the unlawful nature of the services provided by T1 Payments . . . ." (*Id.* at ¶ 125.)

- "T1 inserts into its pre-printed, form CPPA various provisions, which are both procedurally and substantively unconscionable. . . . T1 uses these hidden provisions to set up customers such as Beyond Wealth so that T1 can extort millions of dollars from it." (*Id.* at ¶¶ 234, 236.)

Additionally, it alleges that "[t]he numerous lawsuits and counterclaims filed against T1 Payments speak to the nature of this conduct as part of pattern and practice: *DermAktive LLC, et al. v. Atlantic-Pacific Processing Systems Inc. et al*., Eighth Judicial District, Clark County Nevada, Case No. A-16- 737420-B, filed May 26, 2016 . . . ."  (*Id.* at ¶ 52.)

On September 29, 2020, Bailey Kennedy requested that Beyond Wealth's counsel refrain from taking further action in the litigation until it had the chance to fully investigate the matter. (Ex. 39.[40])  Beyond Wealth disregarded the request and filed a Motion for Preliminary Injunction on October 2, 2020.  (ECF No. 63.[41])

## III.    LEGAL STANDARD

Motions to disqualify are decided in light of state law.  *See, e.g.*, *In re Cnty. of L.A.*, 223 F.3d 990, 995 (9th Cir. 2000).  Thus, this Court will look to Nevada law to decide this Motion,

---

[39]     First Am. Countercl., Aug. 19, 2020, ECF No. 21.

[40]     Email from Dennis L. Kennedy, Bailey Kennedy, to all counsel (Sept. 29, 2020), attached as Ex. 39.

[41]     Def. and Counterclaimant Beyond Wealth PTE LLC's Mot. for Prelim. Inj.; Memorandum of Points and Authorities in Support Thereof, Oct. 2, 2020, ECF No. 63.

BAILEY✧KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

including the Nevada Rules of Professional Conduct (RPCs). *See, e.g.*, *Trade Show Servs. v. Integrated Sys. Improvement Servs.*, No. 2:17-cv-01685-JAD-NJK, 2019 U.S. Dist. LEXIS 51298, *5 (D. Nev. Mar. 27, 2019). Importantly, the Nevada RPCs apply to out-of-state attorneys (like Mr. Cebeci) who have been admitted *pro hac vice* in a matter. LR IA 11-7(a).

Under Nevada law, a party seeking to disqualify opposing counsel must show: (i) a reasonable possibility that a specifically identifiable impropriety has occurred; and (ii) that the likelihood of public suspicion or obloquy outweighs the social interests served by the lawyer's continued involvement in the matter. *Brown*, 14 P.3d at 1270. Close calls are decided "in favor of disqualification." *Id.*

The first *Brown* factor requires the Court to determine whether opposing counsel breached duties owed to the moving party as either a current or former client. *Liapis v. Second Jud. Dist. Ct.*, 282 P.3d 733, 737 (Nev. 2012). This means that the Court must decide (i) whether Mr. Cebeci has breached, and will continue to breach, Nevada RPC 1.9(a), (ii) whether Mr. Cebeci's conflict is imputed to Mr. Rome and other members of their firm, Rome & Associates, pursuant to Nevada RPC 1.10(a), and (iii) whether Rome & Associates' conflict is further imputed to their co-counsel, Mr. Wellman and Mr. Slighting and other members of their firms, Wellman & Warren and the Boyack Law Group, pursuant to *Brown*.

The second *Brown* factor requires the Court to undertake a balancing test "in determining whether disqualification is warranted." *Nev. Yellow Cab Corp. v. Eighth Jud. Dist. Ct.*, 152 P.3d 737, 742-43 (Nev. 2007). This involves weighing the competing interests of the parties, including Beyond Wealth's right to counsel of its choosing and T1 Payments' right "to be free from the risk of even inadvertent disclosure of confidential information," and considering "the public's interest in the scrupulous administration of justice." *Brown*, 14 P.3d at 1269-70.

Disqualification serves to eliminate conflicts of interest and ensure that a former client's confidential information remains protected in a matter. *SHFL Entm't, Inc. v. DigiDeal Corp.*, 2:12-cv-01782-GMN-VCF, 2013 U.S. Dist. LEXIS 6635, *22 (D. Nev. Jan. 16, 2013). Disqualification also serves to "preserve the integrity of [the Court's] judgment and maintain the public confidence

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

in the integrity of the bar."  *Switch Commc'ns Grp. v. Ballard*, No. 2:11-cv-00285-KJD-GWF, 2011 U.S. Dist. LEXIS 98303, at *6-7 (D. Nev. Aug. 31, 2011).

### IV.   LEGAL ANALYSIS

As shown below, the Court should disqualify Beyond Wealth's counsel because:

(a)   Mr. Cebeci has an irreconcilable conflict of interest arising from his prior work for T1 Payments in a substantially related matter.  He has "switched sides" on his former client and is now attacking his prior work product while using confidential information that he obtained while representing T1 Payments in order to advance Beyond Wealth's claims against T1 Payments;

(b)   Mr. Cebeci's conflict is imputed to Mr. Rome and Rome & Associates in large part because Mr. Cebeci was not screened from this matter (much less screened at the outset of the representation as required);

(c)   Rome & Associates' conflict is imputed to Mr. Wellman and his law firm, Wellman & Warren, and Mr. Boyack and his law firm, the Boyack Law Group, because they have openly admitted coordinating their legal strategies in this matter with Mr. Cebeci; and

(d)   Beyond Wealth's right to counsel yields to T1 Payments' justifiable expectation (i) that Mr. Cebeci will maintain in confidence all information that he learned while representing T1 Payments and (ii) that Mr. Cebeci will remain loyal to his former client and not appear in a substantially related matter against his former client on behalf of an adverse party, alongside the public's interest in a lawyer's adherence to and compliance with his ethical obligations.

### A.   Mr. Cebeci Suffers from an Irreconcilable Conflict Under Nevada RPC 1.9(a).

Under Nevada RPC 1.9(a), "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in … a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing."  This rule embodies a lawyer's ongoing duties of loyalty and confidentiality owed to a former client.  *See, e.g.*, *In re Rossana*, 395 B.R. 697, 704-06 (Bankr. D. Nev. 2008).

The impetus of this Motion arises from Mr. Cebeci's prior representation of T1 Payments. Because T1 Payments is his former client, the disqualification analysis is governed by Nevada RPC

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

1  1.9(a).[42]  *See Nev. Yellow Cab Corp.*, 152 P.3d at 741.  To disqualify Mr. Cebeci pursuant to

2  Nevada RPC 1.9(a), the Court must find: "(1) that [T1 Payments] had an attorney-client relationship

3  with [Mr. Cebeci], (2) that the former matter and the current matter are substantially related, and (3)

4  that the current representation is adverse to [T1 Payments]."  *Id.* at 741.

5       The first and third factors are met because (i) Mr. Cebeci has already admitted that he

6  previously represented T1 Payments (*see, e.g.*, Ex. 33 at ¶ 27), and (ii) Mr. Cebeci's representation

7  of Beyond Wealth is adverse to T1 Payments.  It is also true that T1 Payments has not consented to

8  Mr. Cebeci's representation of Beyond Wealth.  (Ex. 1 at ¶ 12.)  Thus, the "pivotal question" is

9  whether Mr. Cebeci's prior work for T1 Payments is "substantially related" to his current work for

10  Beyond Wealth.  *FLS Transp. Servs. v. Casillas*, No. 3:17-cv-0013-MMD (VPC), 2017 U.S. Dist.

11  LEXIS 200470, *8-9 (D. Nev. Dec. 6, 2017).

12       In deciding whether two matters are "substantially related" for purposes of Nevada RPC

13  1.9(a), the Court must: (1) make a factual determination concerning the scope of the former

14  representation, (2) evaluate whether it is reasonable to infer that the confidential information

15  allegedly given would have been given to a lawyer representing a client in such matter, and (3)

16  determine whether that information is relevant to the issues raised in the present matter.  *Id.* at 742.

17  "The burden of proving that two matters are substantially related falls on the party seeking

18  disqualification."  *Waid v. Eighth Jud. Dist. Ct.*, 119 P.3d 1219, 1222 (Nev. 2005).  A "superficial

19  resemblance between the matters is not sufficient."  *Id.*  Instead, the "focus is . . . on the precise

20  relationship between the present and former representation."  *Id.*  At the same time, the Court does

21  not require the moving party to divulge the details of any confidential or privileged information that

22  was previously shared with its former counsel.  *Robbins v. Gillock*, 862 P.2d 1195, 1197 (Nev.

23

---

24  [42]    Mr. Cebeci's feigned role as a contract attorney (discussed further below) for the Monroe Firm in 2016 does not alter the analysis.  The rules governing conflicts apply to "any lawyer, including a temporary lawyer."  N.J.

25  ADVISORY COMM. ON PROF'L ETHICS, Op. 632 (1989); *see also* ABA COMM. ON ETHICS & PROF'L RESPONSIBILITY, FORMAL OP. 88-356 (1988) ("It is clear that a temporary lawyer who works on a matter for a client of a firm with whom

26  the temporary lawyer is temporarily associated 'represents' that client for purposes of Rules 1.7 and 1.9.").  The Nevada Supreme Court looks to other state bar ethics opinions for guidance as well as consults formal opinions issued by the

27  ABA Standing Committee on Ethics and Professional Responsibility in interpreting the Nevada RPCs.  *See, e.g.*, *Marquis & Aurbach v. Eighth. Jud. Dist. Ct.*, 146 P.3d 1130, 1138 & n.22 (Nev. 2006); *Dimartino v. Eight Jud. Dist.*

28  *Ct.*, 66 P.3d 945, 947 (Nev. 2003); *City of Reno v. Reno Police Protective Ass'n*, 59 P.3d 1212, 1218 (Nev. 2002).

BAILEY✦KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

1   1993).  Instead, the Court undertakes a "realistic appraisal of whether confidences might have been

2   disclosed."  *Id.* at 1197; *see also Coles v. Ariz. Charlie's*, 973 F. Supp. 971, 974 (D. Nev. 1997)

3   (indicating that the substantial relationship test may be met "regardless of whether confidences were

4   in fact imparted to the lawyer by the client in the prior representation").

5          As shown below, this matter is "substantially related" to Mr. Cebeci's prior representation

6   of T1 Payments.

7                    1.    Mr. Cebeci Previously Advised T1 Payments in Similar Litigation and With
                            Regard to its Payment Processing System, Including its Relationships with
8                           Acquirers and Template CPPA.

9          As discussed above, in or around April 2016, T1 Payments retained the Monroe Firm to

10  defend the company (and its principal, Mr. Kasdon) in payment processing litigation.  (Ex. 2.)

11  Although T1 Payments communicated with Mr. Monroe (*see* Ex. 1 at ¶ 11), it is clear from the

12  Monroe Firm's billing records, the redline of the CPPA showing Mr. Cebeci as the author of the

13  CPPA's changes, Mr. Cebeci's own declaration (Ex. 33 at ¶ 28), and emails related to the

14  *DermAktive* Actions and/or the *Gilling* Action, that Mr. Cebeci was heavily involved in the

15  representation.  (*See, e.g.*, Ex. 6.)  The representation included defense of fraud claims asserted

16  against T1 Payments (and Mr. Kasdon) in at least two different cases filed by merchants.  (*See also*

17  Ex. 2 at 1 ("Clients retain Lawyers to advise clients regarding pending litigation …."").)  Through

18  that litigation, T1 Payments was accused of, *inter alia*, fraudulently funneling funds received from

19  merchants through a payment processor; or, more plainly, stealing money from merchants (the

20  same allegations being asserted in this matter).  Those merchants (like Beyond Wealth) also

21  challenged the enforceability of an early termination fee – the same fee referenced in the CPPA that

22  Mr. Cebeci reviewed and revised.  Moreover, the First Amended Counterclaim alleges that the

23  claims are part of "pattern and practice" that was complained of in the *DermAktive* State Action—

24  one of the matters in which Mr. Cebeci previously represented T1 Payments and Mr. Kasdon.

25  (ECF No. 21 at ¶ 52.)

26         The Monroe Firm's representation of T1 Payments also included giving legal advice to T1

27  Payments concerning its payment processing services, including information related to its

28  relationships with business partners.  (Ex. 1 at ¶ 15.)  Messrs. Monroe and Cebeci were also asked

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

1   to, and did, render legal advice concerning the template CPPA used by T1 Payments in its business

2   dealings with merchants.  (*Id.*; Ex. 5; Ex. 8 at 4.)

3       In sum, the Court should find that Mr. Cebeci's prior representation of T1 Payments

4   encompassed both litigation and general advice concerning T1 Payments' payment processing

5   services, including without limitation its relationship with one of more acquirers and the provisions

6   of its template CPPA.

7           2.     It is Reasonable to Infer that Mr. Cebeci Received Confidential and Privileged
             Information Related to T1 Payments During the Monroe Firm's Prior
8            Representation of T1 Payments.

9       Unbeknownst at the time to T1 Payments, Mr. Cebeci worked closely with Mr. Monroe in

10   representing T1 Payments.  Among other tasks, he assessed the strengths and weaknesses of claims

11   asserted against T1 Payments and analyzed its template CPPA as shown herein and in his

12   declaration filed in the *New U Life* Action.  (Ex. 33 at ¶ 28.)  As he recently admitted, he also

13   drafted an answer and sent emails and cease and desist letters.  (*Id.*)  Moreover, Mr. Cebeci has

14   indicated that he is still in possession of such confidential and privileged information belonging to

15   T1 Payments.  (*Id.* (noting that his declaration is "[b]ased upon *a review of the information*

16   *available to me* and my personal recollection") (emphasis added).)

17       Such tasks, by their very nature, caused Mr. Cebeci to gain confidential and privileged

18   information belonging to T1 Payments.  The law recognizes that a lawyer who answers a complaint

19   is unable to do so without obtaining material information from the client sufficient to assess the

20   truth of the allegations.  Restatement (Third) Law Governing Lawyers § 132 cmt. d(iii)

21   ("When the prior matter involved litigation, it will be conclusively presumed that the lawyer

22   obtained confidential information about the issues involved in the litigation.").[43]

23       Mr. Monroe was the client contact with T1 Payments.  (Ex. 1 at ¶ 11.)  He traveled to Las

24   Vegas, Nevada and met, in person, with members of T1 Payments to discuss litigation and T1

25   Payments' business structure and operations.  (*Id.* at ¶ 14.)  At that time, he was granted unfettered

26

27   [43]     The Nevada Supreme Court frequently relies upon the Restatement of Law Governing Lawyers in addressing
        the ethical obligations of Nevada lawyers.  *See, e.g., NC-DSH, Inc. v. Gardner*, 218 P.3d 853, 860 (Nev. 2009);
28   *Leibowitz v. Eighth Jud. Dist. Ct.*, 78 P.3d 515, 520 n.19, 521 n.23 (Nev. 2003).

BAILEY❖KENNEDY
8984 Spanish Ridge Avenue
Las Vegas, Nevada 89148-1302
702.562.8820

access to the company's files and made privy to its proprietary processing and compliance issues. (*Id.*)

Although not obvious based on the cryptic nature of the Monroe Firm's billing records, it reasonably appears that Mr. Cebeci billed for discussing information related to T1 Payments with Mr. Monroe on at least four (4) different occasions; specifically, on May 30, 2016, June 6, 2016, June 8, 2016, and July 1, 2016. (Ex. 8 at 1-3, 5.) It is reasonable to infer that Mr. Monroe shared with Mr. Cebeci confidential and privileged information that he learned in conversations with employees of T1 Payments and review of T1 Payments' files.[44]

***Even if they did not speak as often as it appears, Mr. Cebeci is presumed to know what Mr. Monroe learned during the course of the Monroe Firm's representation of T1 Payments***. Attorneys within a firm are presumed to share confidential information with one another relating to a client. *Ryan's Express v. Amador Stage Lines*, 279 P.3d 166, 170 (Nev. 2012). This is true not just for associates and partners but also for attorneys who serve as "of counsel" to a firm. *People ex rel. Dep't of Corrections v. SpeeDee Oil Change Systs., Inc.*, 980 P.2d 371, 383–84 (Cal. 1999); *see also* VA. LEGAL ETHICS OP. NO. 1866 (2012) (stating that it is appropriate to impute client information to a lawyer who serves as "of counsel" to a firm "regardless of whether the lawyer actually has any information about the clients of the firm or vice versa"). Thus, Mr. Cebeci's self-serving denials notwithstanding (*see* Ex. 33 at ¶¶ 31-32), the law presumes that he had access to and was made knowledgeable of T1 Payments' confidential and privileged information.[45]

According to public records, Mr. Cebeci appears to have served in an "of counsel" role to the Monroe Firm. Setting aside his work for T1 Payments, he appeared over the years in several other cases for other clients of the Monroe Firm. (*See* Exs. 10-16.) In his professional biography available through LinkedIn, he holds himself out to the public as having been "of counsel" to the Monroe Firm for over 14 years (Ex. 3), and in 2016, he co-authored an article with Mr. Monroe in

---

[44]    In his Declaration, Mr. Cebeci acknowledges that he spoke with Mr. Monroe concerning the firm's representation of T1 Payments. (Ex. 33 at ¶ 29.)

[45]    Foreclosing Mr. Cebeci's ability to self-servingly deny having T1 Payments' confidential and privileged information ensures that T1 Payments is not otherwise put in the precarious position of trying to disprove a negative because doing so would necessarily require T1 Payments to disclose the very information that it seeks to protect. *See* RESTATEMENT (THIRD) LAW GOVERNING LAWYERS § 123 cmt. b.

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

which he is described as "an attorney with the Law Offices of Theodore Monroe" (Ex. 4). Such representations render him "associated with" the Monroe Firm for imputation purposes. *See, e.g.*, ABA COMM. ON ETHICS & PROF'L RESPONSIBILITY, FORMAL OP. 90-357 (1990); D.C. BAR ASS'N ETHICS OP. 247 (1994).

Assuming (*arguendo*) Mr. Cebeci did not serve as "of counsel" to the Monroe Firm but instead acted as a contract lawyer as he now claims, in spite of his LinkedIn profile, the outcome is the same—he is presumed to know what Mr. Monroe knows about the Monroe Firm's prior work for T1 Payments. While it is true that a contract lawyer is not deemed to be privy to information about all clients represented by a firm, a contract lawyer *is* deemed to be knowledgeable of clients' matters for which he was hired to perform services. *See, e.g.*, ABA COMM. ON ETHICS & PROF'L RESPONSIBILITY, FORMAL OP. 88-356 (1988) ("[I]n the absence of information to the contrary, it should be inferred that such a lawyer in fact is privy to information about the clients actually served but not those of other clients."); ARIZ. STATE BAR ETHICS ADVISORY COMM. OP. 97-09 (1997) (noting that the law assumes that a contract attorney is privy to confidential information of the client for whom the contract attorney is rendering legal services). Because Mr. Cebeci has admitted that he rendered legal services to T1 Payments as a function of working for the Monroe Firm (Ex. 33 at ¶ 28), the law presumes that Mr. Monroe shared with Mr. Cebeci confidential and privileged information that he learned from T1 Payments.

For these reasons, the Court should find that Mr. Cebeci possesses confidential and privileged information belonging to T1 Payments, including its payment processing systems, relationship with business partners (like Payvision), and template CPPA, which he obtained directly through his prior work for T1 Payments and indirectly by imputation from Mr. Monroe.

3.    Information Possessed by Mr. Cebeci is Relevant to the Issues in this Matter.

The information that Mr. Cebeci possesses is relevant to Beyond Wealth's claims and defenses in this matter. In those prior matters, merchants were challenging T1 Payments' business, claiming that it was fraudulent. Beyond Wealth seeks to do just that through its proposed First Amended Counterclaim. Further, Mr. Cebeci relied on his inside knowledge about T1 Payments' relationship with Payvision for purposes of preparing the First Amended Counterclaim. Also, he

has injected T1 Payments' involvement in prior litigation with other merchants into this matter, which includes the prior litigation to which he rendered advice and legal services to T1 Payments (the *DermAktive* State Action).

It gets worse. Mr. Cebeci does not just have confidential and privileged information belonging to T1 Payments that he can use (and, based on recent filings, intends to use) to advance Beyond Wealth's claims and defenses, but he is also challenging his own work product. ***That is, Mr. Cebeci is seeking to invalidate the CPPA signed by Beyond Wealth—a template agreement reviewed and revised by Mr. Cebeci in 2016***. Stated differently, despite having previously advised T1 Payments concerning the CPPA, Mr. Cebeci is now arguing that "the CPPA is void as an illegal contract, and public policy prohibits T1 from charging fees, or claiming any other benefit . . . ." (ECF No. 21 at ¶ 101; *see also id.* at ¶ 51 (alleging "the void and illegal nature of the [CPPA] as a whole").) The resulting conflict could not be clearer. *Maiden v. Bunnell*, 35 F.3d 477, 481 (9th Cir. 1994) (noting that courts analyzing whether a lawyer is laboring under a conflict consider whether the current representation may require the lawyer "to undermine, criticize, or attack his or her own work product from [a] previous case").

Not surprisingly, the law in Nevada (and elsewhere) forbids a lawyer from attacking his own work product, which creates the appearance that he has "switched sides." *JMB Cap. Partners Master Fund, L.P. v. Eighth Jud. Dist. Ct.*, No. 78008, 2019 Nev. Unpub. LEXIS 328, *2 (Nev. Mar. 21, 2019) ("Lawyers typically may not switch sides or attack their own work …."); *see also Lemus v. Olaveson*, No. 2:14-cv-01381-JCM-NJK, 2016 U.S. Dist. LEXIS 66073, *6 (D. Nev. May 19, 2016) (disqualifying a lawyer who sought to attack "his own work product" through which he would invariably use his former client's confidential information); *ASI Holding Co. v. Royal Beach & Golf Resorts, LLC*, 163 So. 3d 668, 671 (Fla. Dist. Ct. App. 2015) (refusing to permit a law firm to attack "the validity of the very document that it had previously represented to be valid and legally binding"); *In re Basco*, 221 S.W.3d 637, 638 (Tex. 2007) (disqualifying a lawyer who sought to attack "work product of his former law partner"); *FMC Techs., Inc. v. Edwards*, 420 F. Supp. 2d 1153, 1162 (W.D. Wash. 2006) (disqualifying an attorney who sought to discredit a former client on matters "that were the subject of the former representation"). This is so even if the

lawyer claims to lack confidential information related to his former client. *See Sullivan Cty. Reg'l Refuse Disposal Dist. v. Town of Acworth*, 686 A.2d 755, 758 (N.H. 1996) ("[E]ven in the absence of any confidences, an attorney owes a duty of loyalty to a former client that prevents that attorney from attacking, or interpreting, work she performed, or supervised, for the former client.").

Mr. Cebeci has appeared in this matter for Beyond Wealth and openly attacked his former client's CPPA, arguing that it is "void as an illegal contract." (ECF No. 21 at ¶ 123.) He has also separately attacked the credibility and integrity of his former client, referring to T1 Payments as "fake and unscrupulous" and claiming that T1 Payments is engaged in "illegal transaction laundering" and an "illegal payment processing scheme." (*Id.* at ¶¶ 50, 85, 120.) Finally, he has already used confidential and privileged information that he received from Mr. Monroe to advance Beyond Wealth's claims (*i.e.*, T1 Payments' relationship with Payvision). (*Id.* at ¶ 115, 119, 120-125.) His actions have caused him to breach his duties owed to T1 Payments under Nevada RPC 1.9.

\*        \*        \*        \*

Mr. Cebeci previously advised T1 Payments concerning, *inter alia*, (i) its defenses in litigation with other merchants, (ii) its payment processing system, including its relationship with Payvision and (iii) its template CPPA. He is now attacking T1 Payments' payment processing system and, worse, challenging the validity and enforceability of the CPPA. His continuing duties of loyalty and confidentiality owed to T1 Payments preclude him from doing so. Based on the foregoing, the Court should find that Mr. Cebeci has breached, and will continue to breach, Nevada RPC 1.9(a) through his representation of Beyond Wealth in this matter.[46]

## B.      Mr. Cebeci's Conflict Must Be Imputed to Others at Rome & Associates.

Nevada RPC 1.10(a) provides: "While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from

---

[46] Although unlikely based on his prior representations and the documentary evidence before the Court, Mr. Cebeci may argue in response to this Motion that he was not involved in the Monroe Firm's prior representation of T1 Payments. Setting aside that any such finding would essentially require the Court to rewrite history, Mr. Cebeci would still be in violation of his ethical duties if he were to continue to represent Beyond Wealth in this matter. Nevada RPC 1.9(b).

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

doing so by Rules 1.7, 1.9, or 2.2, unless the prohibition is based on a personal interest of the prohibited lawyer and does not present a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm."  An exception exists if, but only if, the tainted lawyer (i) "did not have a substantial role in or primary responsibility for the matter that causes the disqualification under Rule 1.9," (ii) "is timely screened from any participation in the matter and is apportioned no part of the fee therefrom, and (iii) timely written notice is given to the former client." Nevada RPC 1.10(e).

Pursuant to Nevada RPC 1.10(a), "an attorney's disqualification under RPC 1.9 is imputed to all other attorneys in that disqualified attorney's law firm." *New Horizon Kids v. Eighth Jud. Dist. Ct.*, 392 P.3d 166, 169 (Nev. 2017).  Such a result is premised on the idea that "each lawyer [in a firm] is vicariously bound by the obligation of loyalty owed by each lawyer with whom the lawyer is associated." MODEL R. PROF'L CONDUCT, R. 1.10 cmt. [2].[47]

Mr. Cebeci's conflict (and resulting disloyalty) is imputed to all other members of his firm (Rome & Associates), including Mr. Rome and Ms. Dahlberg.  Mr. Cebeci had a substantial role in the Monroe Firm's prior representation of T1 Payments, evident from his revisions to the draft CPPA and preparation of an answer in litigation for T1 Payments.  Further, and more importantly, Mr. Cebeci is actively involved in this matter for Beyond Wealth; Rome & Associates did not timely screen Mr. Cebeci upon agreeing to represent Beyond Wealth.  In fact, it reasonably appears that Beyond Wealth retained Rome & Associates for the express purpose of seeking advice and guidance from Mr. Cebeci related to Beyond Wealth's claims and defenses.  Lastly, advance written notice was not sent to T1 Payments by Rome & Associates indicating that it had been retained to represent Beyond Wealth prior to its appearance in this matter though it timely screened Mr. Cebeci from the file.  (Ex. 1 at ¶ 12.)

/ / /

/ / /

---

[47]    In Nevada, the Model Rules "may be consulted for guidance in interpreting and applying the Nevada Rules of Professional Conduct."  *See* Nevada RPC 1.0A.  They are also frequently relied upon by the Nevada Supreme Court. *See, e.g., Palmer v. Pioneer Inn Assocs., Ltd.*, 59 P.3d 1237, 1241-42 (Nev. 2002); *In re Discipline of Schaefer*, 25 P.3d 191, 199 (Nev. 2001).

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

For these reasons, alongside finding that Mr. Cebeci is barred from representing Beyond Wealth pursuant to Nevada RPC 1.9(a), the Court should find that all other members of Rome & Associates are barred from representing Beyond Wealth pursuant to Nevada RPC 1.10(a).

**C.**     **Rome & Associates' Conflict Must Be Imputed to Wellman & Warren and the Boyack Law Group.**

Nevada law does not recognize the concept of "double imputation"; that is, imputing a lawyer's disqualification to his co-counsel at a different firm.  Instead, Nevada law requires "proof of a reasonable probability that [co-]counsel actually acquired privileged, confidential information" from a disqualified lawyer.  *See Brown*, 14 P.3d at 1267, 1269.

"When determining whether re-imputation of knowledge is warranted[], courts have considered several factors, including whether disqualified counsel actually possessed confidential information, the relationship between disqualified counsel and co-counsel, the role that both the tainted attorney and co-counsel have played in the underlying litigation, the likelihood that confidences have been shared, and the extent to which the tainted attorney has acted as a conduit of information to co-counsel."  *In re Am. Home Prods. Corp.*, 985 S.W.2d 68, 79 (Tex. 1998).  The moving party meets its burden by showing "that there were substantive conversations between disqualified counsel and co-counsel, joint preparation for trial by those counsel, or the apparent receipt by co-counsel of confidential information."  *Id.* at 81.

Here, there is a reasonable probability that the attorneys from Wellman & Warren and the Boyack Law Group actually acquired T1 Payments' confidential and privileged information from Mr. Cebeci.  In recent correspondence with T1 Payments' counsel, Mr. Wellman admitted that he is "not a payment processor expert" and was "unaware of the significant nature of the violations engaged in by T1 Payments," and that only after associating "attorneys Eugene Rome and Bradley Cebeci to assist in [the] matter . . . *we* have come across significant information of the illegal nature of the CPPA as well as multiple violations of the relevant bank card rules."  (Ex. 37 at 2 (emphasis

BAILEY✦KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

1  added); *see also* Ex. 38[48] (Mr. Wellman instructing T1 Payments' counsel that they may contact

2  Mr. Cebeci directly "as long as [he is] kept in the looped by being copied").)

3  By demonstrating the close relationship between Wellman & Warren and Mr. Cebeci in

4  strategizing concerning the handling of Beyond Wealth's claims in this matter, T1 Payments meets

5  its burden of having the Court impute T1 Payments' confidential and privileged information from

6  Mr. Cebeci to members of Wellman & Warren.  *See, e.g.*, *Polish Roman Catholic St. Stanislaus*

7  *Parish v. Hettenbach*, 303 S.W.3d 591, 604-05 (Mo. 2010) (finding that the moving party may meet

8  its burden by showing that co-counsel "worked closely" with conflicted counsel "in preparing the

9  underlying lawsuit").  And absent a showing in response to this Motion that such information was

10  not shared between counsel, Wellman & Warren must be disqualified from further representing

11  Beyond Wealth.  *See id.*

12  As it pertains to Mr. Slighting who serves as local counsel for Beyond Wealth, because he

13  has appeared on recent filings alongside Mr. Cebeci, it is reasonable to find that he, too, was made

14  privy to the confidences that Mr. Cebeci possesses related to T1 Payments.  Thus, he should also be

15  disqualified.  *FLS Transp. Servs.*, 2017 U.S. Dist. LEXIS 200470, at *18 (disqualifying local

16  counsel upon granting the moving party's request to disqualify lead counsel).

17  For these reasons, the Court should impute Rome & Associates' conflict to their co-counsel.

18  **D.    The Totality of the Circumstances Mandate Disqualification.**

19  There is no doubt that Mr. Cebeci is laboring under an irreconcilable conflict of interest that

20  is imputed to his law firm and further imputed to his co-counsel, thus satisfying the first *Brown*

21  factor.  Turning to the second *Brown* factor, the Court must consider the interests of the parties and

22  the public in deciding whether to disqualify Beyond Wealth's counsel.  Doing so here leads to the

23  singular conclusion that disqualification is mandated.

24  **First**, T1 Payments has an absolute interest in preserving its confidences and privileged

25  information.  As T1 Payments' former lawyer, Mr. Cebeci is duty-bound to maintain in confidence

26  all information that he learned while representing T1 Payments and not to use such information to

27

28  [48]    Email from Scott W. Wellman, Wellman & Warren LLP, to Ari R. Rothman, Venable LLP; Bradley O Cebeci
and Eugene Rome, Rome & Assocs. (Aug. 28, 2020), attached as Ex. 38 (redacted).

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

T1 Payments' disadvantage.  Nevada RPC 1.9(c)(1), (2).  Further, T1 Payments has a right to expect that its former lawyer will not appear in any substantially related matter against it, seeking to invalidate the very document that he previously worked on (the CPPA).  Such impermissible side-switching on his part makes his disqualification "not only justified, but also essential."  *FMC Techs.*, 420 F. Supp. 2d at 1162.

**Second**, while Beyond Wealth has the right to counsel of its choosing, such right yields to "the need to maintain the highest standards of client confidentiality and attorney ethics."  *U.S. ex rel. Bahsen v. Boston Sci. Neuromodulation Corp.*, 147 F. Supp. 3d 239, 249 (D.N.J. 2015).  Further, this case is in its infancy as discovery has yet to begin, four parties have not appeared while the other counter-defendants have sought dispositive relief under Rule 12(b), and no scheduling order has been entered.  Also, if the Court grants T1 Payments' pending motion to dismiss the amended counterclaims (ECF No. 27[49]), then there will be no need for Mr. Cebeci or other members of Rome & Associates to remain involved in this action, as their primary role appears to be prosecuting the amended counterclaim for Beyond Wealth.

**Finally**, the public has an interest in knowing that lawyers will respect their ongoing duties of loyalty and confidentiality owed to their former clients.  The public will become suspicious if the Court allows Mr. Cebeci to continue to represent Beyond Wealth despite his conflict (which, as discussed above, is imputed to his firm and his co-counsel).  *See, e.g.*, *Pound v. DeMera Cmaeron*, 36 Cal. Rptr. 3d 922, 928 (Cal. Ct. App. 2005) (noting that the obligation "to maintain public confidence in the legal profession and the judiciary" would be "defeated" if the court permitted the lawyer to continue representing the plaintiffs after having represented the defendants).

Thus, upon balancing the interests of the parties, and after giving due regard to the public interest in the scrupulous administration of justice, the Court should disqualify Beyond Wealth's counsel.

/ / /

/ / /

---

[49] T1 Payments LLC's Mot. to Dismiss First Am. Countercl. and Mem. of P&A in Supp., Sept. 8, 2020, ECF No. 27.

BAILEY✧KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

## V.    CONCLUSION

Clients face an unfair disadvantage when forced "to be confronted by an attorney whom they believe possesses intimate knowledge of their views and impressions of th[e] litigation, even though that attorney professes that he has no knowledge nor recalls any, and, if he did, he would not need it or use it in a way to either alarm or harm [his former clients]."[50]  T1 Payments should not have to defend itself against a party represented by a lawyer who previously advised T1 Payments on matters central to this litigation.  Stated another way, it is simply "untenable" that Mr. Cebeci believes that he can switch sides in a substantially related matter and attack his own work product.[51]  The Court should preclude him from doing so, and by extension, his law firm and his co-counsel.  This Motion should be granted in its entirety.

DATED this 26th day of October, 2020.

BAILEY❖KENNEDY

By:  /s/ Dennis L. Kennedy
DENNIS L. KENNEDY
JOSHUA P. GILMORE
KELLY B. STOUT

*Attorneys for Plaintiff/Counter-Defendant*
T1 PAYMENTS LLC

---

[50]    *Zalewski v. Shelroc Homes, LLC*, 856 F. Supp. 2d 426, 436 (N.D.N.Y. 2012).

[51]    *Bernhoft Law Firm, S.C. v. Pollock*, No. 12-CV-1608 W(BLM), 2013 U.S. Dist. LEXIS 18988, *6 (S.D. Cal. Feb. 12, 2013).

## CERTIFICATE OF SERVICE

I certify that I am an employee of BAILEY❖KENNEDY and that on the 26th day of October, 2020, service of the foregoing **MOTION TO DISQUALIFY BEYOND WEALTH PTE LLC'S COUNSEL** was made by mandatory electronic service through the United States District Court's electronic filing system and/or by depositing a true and correct copy in the U.S. Mail, first class postage prepaid, and addressed to the following at their last known address:

SCOTT WELLMAN
**WELLMAN & WARREN LLP**
24411 Ridge Route, Suite 200
Laguna Hills, California 92653

Email:  SWellman@w-wlaw.com

*Attorneys for*
*Defendant/Counterclaimant.*
BEYOND WEALTH PTE LLC

---

BRADLEY OMER CEBECI
BRIANNA DAHLBERG
EUGENE ROME
**ROME & ASSOCIATES**
2029 Century Park East, Ste. 450
Los Angeles, California 90067

Email:
Bcebeci@romeandassociates.com
Bdahlberg@romeandassociates.com
Erome@romeandassociates.com

*Attorneys for*
*Defendant/Counterclaimant,*
BEYOND WEALTH PTE LLC

---

BRADLEY S. SLIGHTING
**BOYACK LAW GROUP**
1707 Village Center Circle, Ste. 100
Las Vegas, Nevada 89134

Email:  brad@boyacklawgroup.com

*Attorneys for*
*Defendant/Counterclaimant,*
BEYOND WEALTH PTE LLC

---

ARI N. ROTHMAN
MOXILA UPADHYAYA
P. RANDY SEYBOLD
JANE B. BABER
**VENABLE LLP**
600 Massachusetts Avenue, N.W.
Washington, D.C. 20001

Email:
NRothman@Venable.com
MAUpadhyaya@Venable.com
RSeybold@Venable.com
JBBaber@Venable.com

*Attorneys for Plaintiff/Counterclaim*
*Defendant,*
T1 PAYMENTS LLC

---

KORY L. KAPLAN
**KAPLAN COTTNER**
850 E. Bonneville Avenue
Las Vegas, Nevada 89101

Email:  Kory@Kaplancottner.com

*Attorneys for Plaintiff/Counterclaim*
*Defendant,*
T1 PAYMENTS LLC and
*Counterclaim Defendant,* LISA
KAYE

| | |
|---|---|
| Puoy K. Premsrirut<br>**BROWN BROWN &**<br>**PREMSRIRUT**<br>520 South Fourth Street, 2ⁿᵈ Floor<br>Las Vegas, Nevada 89101 | Email:  puoy@brownlawlv.com<br><br>*Attorneys for Interested Party,*<br>NEW U LIFE CORPORATION |
| Moxila Upadhyaya<br>**VENABLE LLP**<br>600 Massachusetts Avenue, N.W.<br>Washington, D.C. 20001 | Email:<br>MAUpadhyaya@Venable.com<br><br>*Attorneys for Counterclaim*<br>*Defendant,* LISA KAYE |

*/s/  Susan Russo*
Employee of BAILEY❖KENNEDY

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820