**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

***

| | |
|---|---|
| T1 PAYMENTS LLC, | |
| Plaintiff, | 2:20-cv-01405-JCM-VCF |
| vs. | **REPORT AND RECOMMENDATION** |
| BEYOND WEALTH PTE LLC, | MOTION TO DISQUALIFY BEYOND |
| Defendant. | WEALTH PTE LLC'S COUNSEL [ECF No. 90] |
| And related Claims | |

Before the Court is plaintiff T1 Payments LLC's motion to disqualify defendant Beyond Wealth PTE LLC'S counsel. (ECF No. 90). The Court recommends granting and denying the motion in part.

## I.    Background

Plaintiff T1 Payments asks the Court for declaratory relief against Beyond Wealth regarding money that T1 Payments allegedly owes Beyond Wealth pursuant to a card payment processing agreement: (ECF No. 1). T1 alleges that it only owes $1,536,658 (not $4,000,000) to Beyond Wealth with a due date of April 25, 2021 (not immediately).  (*Id*.)  Beyond Wealth brings fifteen counterclaims against T1 for (1) fraud, (2) conversion, (3) civil theft, (4) money had and received, (5) unjust enrichment, (6) negligent misrepresentation, (7) civil RICO (NRS 207.470), (8) civil RICO (federal), (9) business disparagement (10) tortious interference with contract, (11) tortious interference with prospective economic relations, (12) breach of contract, (13) breach of the covenant of good faith and fair dealing, (14) declaratory relief, and (15) (additional) declaratory relief. (ECF No. 21). T1 filed motions to dismiss Beyond Wealth's counterclaims (ECF Nos. 27 and 68). Beyond Wealth filed a motion for a preliminary injunction (ECF No. 63). T1 also filed a motion for attorneys' fees (ECF No. 56) and to show cause (ECF No. 66). These motions are pending before the Court.

Plaintiff argues in its motion to disqualify counsel that attorney Bradley Cebeci represented T1 when he worked for another firm, Law Offices of Thomas F. Monroe. (ECF No. 90 at 1). Cebeci, now with Rome & Associates, is a California licensed attorney appearing pro hac vice. (*Id*., see also ECF No. 43). T1 argues that Cebeci advised T1 on issues that are central to this case, including: (1) advice regarding a template merchant agreement which Cebeci now argues is unconscionable on its face and void as an illegal contract because T1 Payments operated fraudulently, and (2) assistance in the defense of T1 Payments in litigation in which merchants claimed that T1 Payments' business was fraudulent. (ECF No. 90 at 3). T1 also argues that Cebeci had access to confidential information about T1's business relationships with acquirers and it alleges he is using that information to bring claims against one of those acquirers. (*Id.* at 3). T1 argues that Cebeci, Cebeci's law firm Rome & Associates, Beyond Wealth's other California lawyer Scott Wellman, and Beyond Wealth's local counsel Bradley S. Slighting of the Boyack Law Group should all be disqualified. *Id.* at 30.

Cebeci and his co-counsel argue in his response that T1's motion to disqualify is a tactic to gain an edge because the attorneys at Rome & Associates focus their practice on payment processing law. (ECF No. 104 at 1). The attorneys argue that Cebeci's past work for T1 is not substantially related to the issues in this case because (1) Cebeci completed only a few discrete assignments for T1 over a two-month period in 2016, and (2) that representation ended before T1 lost its registration as a "Payment Facilitator" with Visa and Mastercard in 2017. (*Id.* at 2). Cebeci argues that the 2016 cases and this case are not substantially related because when Beyond Wealth entered into an agreement with T1 in 2020, it did not know that as of 2017 T1 did not have the legal ability to process credit card transactions because T1 was not properly registered with Visa or Mastercard to provide Payment Facilitator services. (*Id.*)

Cebeci argues that when he did work for T1 in 2016, T1 complied with the law. (*Id.*) Cebeci argues that T1 previously was registered as a Payment Facilitator, but it was de-registered in 2017 after its sponsoring acquirer at that time, Vantiv LLC ("Vantiv"), sued T1 for defrauding merchants and

cardholders, and diverting funds using fictitious entities. See *Compl. In Vantiv LLC v. T1 Payments LLC*, Case No. 1:17-cv-00164-SJD (S.D. Ohio March 14, 2017) at 11, 21-24.  Cebeci partially drafted the merchant agreement in 2016 (his name appears as an editor in the track changes and Cebeci admits he worked on the draft, see ECF No. 91-5), but Cebeci and the attorneys argue that the reason the agreement is unenforceable is because of T1's conduct, not because of the terms of the agreement itself. (ECF No. 104 at 19-20). Beyond Wealth filed a joinder (ECF No. 105) to the attorneys' response.

T1 argues in its reply that this case and the issues Cebeci worked on for T1 are substantially related and thus it is entitled to a presumption that Cebeci shared confidences with Beyond Wealth. (ECF No. 118 at 10). T1 also argues in its reply that the amended countercomplaint attacks T1's payment processing operations and the provisions of the merchant processing agreement, which are identical or materially identical to the terms in the merchant agreement that Cebeci reviewed and revised in 2016. (*Id.* at 19, citing to ECF No. 21).

Plaintiff emphasized at the hearing that the amended counterclaim has 10 or 13 counts that alleged that the company was an unlawful business, and that on that basis the contract was not valid and could not be enforced. (See ECF No. 145 at 13). Plaintiff also emphasized that the merchant agreement that is at the heart of this case now is substantially the same as the merchant agreement that Cebeci actively drafted in part. (*Id.* at 28).

Beyond Wealth's attorneys argued at the hearing that Beyond Wealth's claims have nothing to do with the wording of a payment processing agreement because T1 was delisted in 2017 but then continued to represent to people that it was listed. (ECF No. 145 at 38-39). T1 countered at the hearing that Cebeci's argument, that Beyond Wealth is only attacking T1's conduct and not the agreement, is contradicted by the plain language of the amended counterclaim. (*Id.* at 49). T1 cited to three allegations regarding the merchant agreement in the amended counterclaim: (1) "the [early termination fee] is unenforceable as an illegal penalty provision…."; (2) "Counterclaim-Defendants drafted the [merchant

agreement] to circumvent Card Brand Rules and federal law…"; and (3) T1 inserts into its pre-printed, form [merchant agreement] various provisions, which are both procedurally and substantively unconscionable…" (ECF No. 145 at 49, citing to ECF Nos. 118 at 19, and 21 at 13, 21, 28, and 49).

## II.    Discussion

Motions to disqualify are decided considering state law. *In re Cnty. of L.A.*, 223 F.3d 990, 995 (9th Cir. 2000).

The Nevada Rules of Professional Conduct provide that:

> [a] A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

See NRPC 1.9.

Nevada RPC 1.10(a) provides: "While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7, 1.9, or 2.2, unless the prohibition is based on a personal interest of the prohibited lawyer and does not present a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm." An exception exists if the lawyer (i) "did not have a substantial role in or primary responsibility for the matter that causes the disqualification under Rule 1.9," (ii) "is timely screened from any participation in the matter and is apportioned no part of the fee therefrom, and (iii) timely written notice is given to the former client. NRPC 1.10(e). Pursuant to NRPC 1.10(a), "an attorney's disqualification under RPC 1.9 is imputed to all other attorneys in that disqualified attorney's law firm." *New Horizon Kids v. Eighth Jud. Dist. Ct.*, 392 P.3d 166, 169 (Nev. 2017).

The Nevada Supreme Court held that the party seeking disqualification must establish "(1) that it had an attorney-client relationship with the lawyer, (2) that the former matter and the current matter are

4

substantially related, and (3) that the current representation is adverse to the party seeking

disqualification." *Nevada Yellow Cab Corp. v. Eighth Jud. Dist. Ct.,* 123 Nev. 44, 50 (2007) (emphasis

added). LR IA 11-7 (a) provides that, "[a]n attorney admitted to practice under any of these rules must

adhere to the standards of conduct prescribed by the Model Rules of Professional Conduct as adopted

and amended from time to time by the Supreme Court of Nevada, except as these standards may be

modified by this court."

The federal rules of civil procedure, "should be construed, administered, and employed by the

court and the parties to secure the just, speedy, and inexpensive determination of every action and

proceeding." FRCP 1. Under its inherent power, a court may sanction an attorney or party, "by the

control necessarily vested in courts to manage their own affairs so as to achieve the orderly and

expeditious disposition of cases." *Chambers v. NASCO, Inc*., 501 U.S. 32, 43-45, L. Ed. 2d 27 (1991).

Attorneys are prohibited from attacking their own work product. See Restatement (Third) of the

Law Governing Lawyers §132(1) & cmt. d(ii) (2000) (prohibiting attorneys from attacking their own

prior work even if no confidential information would be compromised in doing so). "The discretion

courts have to determine whether the specific facts of a case warrant a sanction short of disqualification

is broad…it is not obligated to disqualify that lawyer merely because he has run afoul of the applicable

ethical rules. The court is encouraged instead to examine the specific facts and circumstances peculiar to

the individual case to decide whether disqualification, or some lesser sanction, would be an appropriate

remedy. In other words, even when counsel has been shown to have committed an ethical rule infraction

the court retains discretion to decline to order disqualification, and, in many cases, courts have done just

that." *UMG Recordings, Inc. v. MySpace, Inc*., 526 F. Supp. 2d 1046, 1062 (C.D. Cal. 2007), citing to

Richard E. Flamm, *Lawyer Disqualification: Conflicts of Interest and Other Bases § 23.1 at 443–45*

(Banks and Jordan, 2003).

The Court's inherent power, "also entitles the Court to deny a disqualification motion on condition that the attorney or firm in question comply with certain limitations. This is because a court's authority to disqualify an attorney or craft appropriate relief to punish or deter attorney misconduct derives from the court's equitable powers. See Geoffrey C. Hazard, *Jr. & W. William Hodes, The Law of Lawyering: A Handbook on the Model Rules of Professional Conduct § 4.7*, at 4-22 (Aspen, 3d ed. 2007) ("Former clients in particular often pursue motions to disqualify their former counsel from adverse representation. Such motions…invoke the equitable powers of the court, and when successful result in an order that is in effect an injunction. Hence…a motion for disqualification is governed by such equitable principles as waiver, estoppel, latches, 'undue hardship' and 'a balancing of the equities.' This helps explain why courts sometimes deny relief on motion for disqualification, even when there is clear proof of violation of a rule of professional conduct.").

Disqualification motions are, "subjected to particularly strict judicial scrutiny." *Shurance v. Planning Control Int'l, Inc*., 839 F.2d 1347, 1348 (9th Cir. 1988) (quoting *Optyl Eyewear Fashion Int'l Corp. v. Style Cos*., 760 F.2d 1045, 1050 (9th Cir. 1985). "Disqualification of counsel is a drastic measure which courts should hesitate to impose except when absolutely necessary." *FLS Trans. Servs., Inc. v. Casillas,* 3:17-cv-0013-MMD (VPC), 2017 WL 6043611, 3 (D. Nev. Dec. 6, 2017).  The party seeking disqualification has a "high standard of proof to meet in order to prove that counsel should be disqualified." *Id.* (internal quotation omitted). Close calls are decided in favor of disqualification. *Brown v. Eighth Jud. Dist. Ct. ex rel. Cnty. of Clark,* 14 P.3d 1266, 1270 (Nev. 2000); (However, "parties should not be allowed to misuse motions for disqualification as instruments of harassment or delay"). The Court must balance the competing interests of a parties' right to be represented by counsel of their choice, and the "right to be free from the risk of even inadvertent disclosure of confidential information." *Id.*

6

T1 has met its burden to show that an attorney-client relationship with Cebeci existed and that the current representation is averse to T1. The litigation matters that Cebeci worked on while employed at the Monroe firm in 2016, however, are not substantially related given that the issues in this case are (1) centered around how much money T1 owes Beyond Wealth and (2) whether the merchant agreement in this case is now enforceable since T1 was allegedly not in compliance with payment processing rules in 2020 (and as of 2017). This is not a close case since Cebeci advised T1 on compliance issues and in 2016 T1 allegedly complied with payment processing rules. T1 has not sustained its burden to show that the litigation matters that Cebeci worked on for T1 in 2016 are substantially related given the significant changed circumstances in T1's alleged compliance.

The Court finds that T1 has shown that Cebeci is attacking his own work product based on the bare allegations in the complaint. For example, the allegation in Beyond Wealth's amended counterclaim, that the, "Counterclaim-Defendants *drafted* the [merchant agreement] to circumvent Card Brand Rules and federal law…" (emphasis added) per its plain language attacks T1's intent in drafting the agreement and the language of the merchant agreement itself. The plain language of Beyond Wealth's allegations shows that Cebeci is attacking his own work product since Cebeci helped draft the merchant agreement for T1 in 2016. The Court thus finds that Cebeci's actions here are unethical, but the Court retains broad discretion regarding whether to disqualify him or to impose lesser sanctions.

Since the 2016 litigation is not substantially related, T1's right to be free from the risk of even inadvertent disclosure of confidential information is not strongly implicated here. Applying strict scrutiny, the Court should not deprive Beyond Wealth of counsel with specific knowledge of payment processing law in this case unless it is necessary.

The Court also finds that the timing of T1's motion (soon after Beyond Wealth's motion for a preliminary injunction) shows that T1 has an alternate reason to seek disqualification now. T1 knew that Cebeci worked on their contract in 2016. T1 also knew that Cebeci represented other litigants against it

in other cases, but it did not raise Cebeci's representation as an issue in other cases. (See ECF No. 104 at 6, listing cases). For example, in *T1 Payments LLC v. Sarah Grauert et al.*, Case No. 2:20cv00411-KJD-VCF, Cebeci entered his appearance in Grauert's answer/counterclaims on March 27, 2020. (See ECF No. 5 at 1). Grauert's counterclaims were nearly identical to the ones in this case, yet T1 never raised the purported conflict and the parties settled. (See ECF No. 42). T1 only seeks to disqualify Cebeci from this case now. The timing of T1's motion and its possible waiver of the issue in other cases regarding Cebeci raise principles of equity which weigh against disqualifying Cebeci, his firm, and co-counsel.

Motions to disqualify have unfortunately become more common and T1's motion has all the hallmarks of a litigant seeking a strategic advantage. T1 has not met the high standard of proof required to show that counsel should be disqualified. Balancing the equities, Beyond Wealth would be greatly prejudiced it the Court deprived it of counsel that focus their practice on payment processing, especially given the pending request for injunctive relief, while the Court can impose sanctions and limitations on Cebeci and his firm to both address Cebeci's actions regarding his work product and prevent a future conflict from arising.

The Court finds that disqualification is not necessary under the circumstances of this case because a lesser sanction would be an appropriate remedy. The need to maintain ethical standards will be fully vindicated if the Court sanctions Cebeci for his conduct. As sanctions, the Court recommends admonishing Cebeci and revoking Cebeci's privilege to practice pro hac vice in this case. The Court also recommends imposing conditions upon Rome & Associates, the Court should order the firm to (1) screen Cebeci from this case going forward to avoid future conflicts or issues from arising in this litigation, and (2) certify that Cebeci has been screened from this case and that he will not share in any fees going forward by filing a notice with this Court regarding the screening. The screening should comply with Nevada law. Screening Cebeci from this case should not be difficult for Rome & Associates since Cebeci lives in Guatemala and does not share an office with his colleagues. Sanctioning

Cebeci, rather than disqualifying him and his law firm, will also promote the goals of FRCP 1 to provide a just, speedy, and inexpensive determination of this action because the case will be able to move forward without the significant delay of Beyond Wealth needing to secure new counsel familiar with payment processing law and this case.

Since the Court finds that disqualification of Cebeci is not necessary here given that sanctions are available, the Court also recommends denying T1's request to impute disqualification to Cebeci's law firm Rome & Associates and co-counsel. Balancing the equities, T1 has not met its heavy burden to disqualify counsel. The Court recommends that its motion be granted in part, only to the extent that Cebeci should be sanctioned and conditions should be imposed upon Rome & Associate's representation of Beyond Wealth going forward.

Accordingly,

IT IS RECOMMENDED that T1's motion to disqualify counsel (ECF No. 90) be GRANTED IN PART AND DENIED IN PART: Cebeci, his firm, and his co-counsel should not be disqualified, but the Court should impose the following sanctions and conditions:

1.  The Court should admonish and sanction attorney Cebeci: it should revoke Cebeci's privilege to practice pro hac vice in this case; and

2.  The Court should impose conditions upon Cebeci's firm Rome & Associates and order it to (1) screen Cebeci from this case going forward, and (2) certify that Cebeci has been screened from this case and that he will not share in any fees going forward by filing a notice with this Court regarding the screening.

IT IS SO RECOMMENDED.

DATED this 23rd day of December 2020.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE